STATE OF CONNECTICUT *v.* MICHAEL T. SUROWIECKI

BOGDANSKI, C. J., PETERS, HEALEY, ARMENTANO and SHEA, Js.

Argued March 3—decision released May 5, 1981

*John H. Durham,* assistant state's attorney, with whom, on the brief, was *Arnold Markle,* state's attorney, for the appellant (state).

*Bruce A. Sturman,* assistant public defender, with whom, on the brief, were *Jerrold H. Barnett,* public defender, and *Anthony V. DeMayo,* public defender, for the appellee (defendant).

ARMENTANO, J. The facts are not in dispute. On September 27, 1978, a police sergeant of the Meriden police department submitted to a judge an application for a search and seizure warrant. The application requested judicial authorization for the search of the defendant's person, automobile and apartment. The judge reviewed the application and found that it established probable cause for a search of the areas listed and for a seizure of the items described. He administered the oath to the sergeant and signed the jurat on the application. He did not, however, affix his signature to the actual search warrant. There is no dispute that the judge intended to sign the search warrant and failed to do so because of "a mere oversight." Pursuant to the unsigned search warrant, the police searched the defendant's automobile and apartment. They used the evidence seized during the search to establish the probable cause necessary to obtain a warrant for the defendant's arrest. The defendant was arrested on October 27, 1978, for the crimes of burglary in the third degree, in violation of General Statutes § 53a-103, and of larceny in the third degree, in violation of General Statutes § 53a-124.

On February 5, 1979, the trial court granted the defendant's motion to suppress the seized evidence on the ground that the unsigned search warrant was fatally defective. On February 20, 1979, the trial court granted the defendant's motion to dismiss the charges because the arrest warrant was based on the fruits of the fatally defective search warrant.

With the permission of the court, the state has appealed from the court's action on these two motions.

The only issue on appeal is: Does the lack of a signature of a judge on a search warrant invalidate it even though the same judge found probable cause, but failed to sign the search warrant because of an oversight?

General Statutes § 54-33a (c) provides that if a judge "is satisfied that grounds for the application exist or that there is probable cause to believe that they exist, he shall *issue* a warrant identifying the property and naming or describing the person, place, or thing to be searched." (Emphasis added.) Although there is no doubt that the judge in this case intended to sign the search warrant, we conclude that he did not issue the search warrant until he performed this act. The signing of the search warrant was to be the identifiable objective manifestation of his subjective intent to issue the search warrant. It is only when the former act has been completed that we are able to say that a search warrant was "issued." In other words, a lawful signature on the search warrant by the person authorized to issue it was essential to its issuance. See *Perry* v. *Johnson,* 37 Conn. 32, 35 (1870); *United States* v. *Carignan,* 286 F. Sup. 284 (D. Mass. 1967); *Kelley* v. *State,* 55 Ala. App. 402, 316 So. 2d 233 (1975); *Martin* v. *State,* 344 So. 2d 248 (Fla. App. 1976); *Byrd* v. *Commonwealth,* 261 S.W.2d 437 (Ky. 1953); *State* v. *Flemming,* 240 Mo. App. 1208, 1213, 227 S.W.2d 106 (1950); *People* v. *Coburn,* 85 Misc. 2d 673, 380 N.Y.S.2d 944 (1976); *Commonwealth* v. *Williams,* 237 Pa. Super. 324, 352

A.2d 67 (1975); *State* v. *Cochrane,* 84 S.D. 527, 173 N.W.2d 495 (1970); 4 Wharton, Criminal Law & Procedure § 1551.

In *State* v. *Almori,* 3 Conn. Cir. Ct. 641, 222 A.2d 820 (1966), the court heard an identical case and concluded that "[t]he unsigned and undated search warrant is fatally defective, invalid and void and conferred no authority to act thereunder." Id., 644. Although we are not bound by a decision of a lower court, we adopt its analysis and conclusion. Furthermore, our conclusion that an unsigned search warrant is not valid is in line with our recent decision in *State* v. *Cook,* 183 Conn. 520, 441 A.2d 41 (1981). In that case this court held defective an arrest warrant signed by an assistant clerk of the Superior Court, even though the judge, who should have signed the warrant, had found probable cause to support it.

Since we find no error in the court's granting of the motion to suppress, it follows, as the state concedes, that there is no error in the granting of the defendant's motion to dismiss since there was insufficient evidence to prosecute the defendant.

There is no error.

In this opinion Bogdanski, C. J., Peters and Healey, Js., concurred.

Shea, J. (dissenting). The majority opinion does not rely upon a violation of any state or federal constitutional provision in declaring this search warrant invalid but rests wholly upon an interpretation of the word "issue" in General Statutes § 54-33a(c) to include a signature of the judge upon the warrant as a necessary element. The

defendant also has refrained from making any claim of infringement of his constitutional rights. It has been held expressly by a tribunal whose determination of the issue should have special significance[1] to this court that nothing in the fourth amendment to the federal constitution requires the personal signature of a magistrate upon a search warrant he has issued. *United States* v. *Turner,* 558 F.2d 46, 50 (2d Cir. 1977). "As long as the magistrate in fact performs the substantive tasks of determining probable cause and authorizing the issuance of the warrant, the amendment is satisfied." Ibid. It is not disputed that these "substantive tasks" were performed by the judge in this case.

Neither in ordinary parlance nor in legal cant does the word "issue" necessarily imply a signature. Webster, Third New International Dictionary; Ballentine's Law Dictionary (3d Ed.). In the context of the statute it means simply officially or authoritatively put forth or sent out. Ibid. Most of the cases cited in support of the proposition that a signature of the issuing magistrate is essential to the validity of a search warrant are readily distinguishable: *Perry* v. *Johnson,* 37 Conn. 32 (1870) (holds that an arrest warrant issued upon a com-

---

[1] In addition to the ordinary deference which should be accorded to decisions of federal courts upon federal constitutional or statutory issues; *Urie* v. *Thompson,* 337 U.S. 163, 174, 69 S. Ct. 1016, 93 L. Ed. 1282 (1949); *In re Halliman,* 43 Cal. 2d 243, 250, 272 P.2d 768 (1954); it should be noted that any federal habeas corpus proceeding which might have ensued upon a conviction of the defendant obtained by use of the evidence which is the subject of the motion to suppress in this case would have been reviewable by the Second Circuit Court of Appeals of the United States. The fact that this decision will foreclose any such review should not detract from the authority of the decisions of that court in fourth amendment cases.

plaint addressed to one justice of the peace may not be issued by a different justice of the peace); *United States v. Carignan,* 286 F. Sup. 284 (D. Mass. 1967) (holds that requirement of Rule 41 (c) of the Federal Rules of Criminal Procedure that warrant state the "name of the person whose affidavit has been taken in support thereof" was not met where name on warrant was that of a different person from the affiant); *Kelley v. State,* 55 Ala. App. 402, 316 So. 2d 233 (1975) (statute defined a search warrant as "an order in writing in the name of the state, *signed by a magistrate*"); *Martin v. State,* 344 So. 2d 248 (Fla. App. 1976) (statute specified that magistrate shall "issue a search warrant *signed* by him"); *State v. Flemming,* 240 Mo. App. 1208, 227 S.W.2d 106 (1950) (statute required warrants to be issued "under the *hand*" of the magistrate); *People v. Coburn,* 85 Misc. 2d 673, 380 N.Y.S.2d 944 (1976) ("The issue is whether the lack of a jurat on an application by a police officer can be cured by subsequent affidavits so as to substantially comply (sic) with CPL 690.35"); *Commonwealth v. Williams,* 237 Pa. Super. 324, 352 A.2d 67 (1975) (failure of the magistrate to note, on face of supporting affidavit, that affiant had been sworn caused the warrant to be defective). The holding in *United States v. Turner,* supra, that the fourth amendment does not require a signature of a magistrate upon a search warrant he has issued should effectively overrule,[2] so far as this court is concerned, the remaining cases relied upon which have reached a contrary result: *Byrd v. Commonwealth,* 261 S.W.2d 437 (Ky. 1953); *State v. Cochrane,* 84 S. D. 527, 173 N.W.2d 495 (1970); *State v. Almori,* 3 Conn. Cir. Ct. 641, 222 A.2d 820 (1966).

---

[2] See footnote 1, supra.

The decision of *State* v. *Cook,* 183 Conn. 520, 441 A.2d 41 (1981), which is also referred to as consistent with the holding of the majority, involved an arrest warrant rather than a search warrant. Practice Book § 594 expressly prescribes that an arrest warrant "shall be signed by the judicial authority . . . ." There is no such provision for search warrants, an omission which would have significance under the maxim inclusio unius, exclusio alterius. It should be noted that prior to the adoption of § 594 it was the common practice for arrest warrants issued by the court in session to be signed by the clerk rather than the judge, a procedure which has been approved. *State* v. *DiLeo,* 28 Conn. Sup. 354, 358, 261 A.2d 547 (1969).

Courts of other states have held in closely similar factual situations that the inadvertent failure of a magistrate to sign a warrant he has issued after making a determination of probable cause does not invalidate the warrant. *Yuma County Attorney* v. *McGuire,* 109 Ariz. 471, 512 P.2d 14 (1973); *Sternberg* v. *Superior Court for County of Solano,* 41 Cal. App. 3d 281, 115 Cal. Rptr. 893 (1974). As noted in these and other cases,[3] the deterrence of unlawful police conduct, which is the only rational justification for the exclusionary rule, will not be advanced by penalizing the law enforcement agency for a judicial mistake.

We are under no compulsion to follow the exclusionary rule in this case because no constitutional

---

[3] For cases where failure of magistrate to sign jurat on supporting affidavit has been held not to invalidate the search warrant, see *State* v. *Penansky,* 140 Ga. App. 405, 231 S.E.2d 152 (1976); *People* v. *LaValley,* 7 Ill. App. 3d 1051, 289 N.E.2d 45 (1972); *State* v. *Brannon,* 25 N.C. App. 635, 214 S.E.2d 213 (1975); *Commonwealth* v. *Lardo,* 240 Pa. Super. 107, 368 A.2d 324 (1976).

violation is even claimed. See *Mapp* v. *Ohio,* 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). Even if the construction adopted by the majority of the word "issue" as used in the statute were sound, it would be an unwise expansion of the exclusionary rule to apply it where the defect is of a technical nature not affecting substantial rights. See Uniform Rules of Criminal Procedure § 461 (a) (2). It is clear that under the facts given we have no more than a technical violation of the statute under the interpretation followed by the majority. Even if I agreed with that construction of the statutory language, I would not exalt form over substance by applying the socially detrimental sanction of suppressing evidence to a situation where no substantial right of the defendant has been infringed and no other significant objective will be achieved.